MAR 21 2024 PM3:54
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE APPLE IPHONE WITH A CRACKED SCREEN AND A BLACK CASE BELONGING TO RALPH BIJOUX WITH CALL NUMBER 475-332-6494 | Case No. 3:24-mj-00253-SDV<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Pappas, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with an iPhone with a cracked screen and a black case belonging to Ralph

Bijoux with call number 475-332-6494 (referred to as "the **SUBJECT PHONE**").  The

information to be searched is described in the following paragraphs and in Attachment A. This

affidavit is made in support of an application for a warrant under 18 U.S.C. § 2703(c)(1)(A)

under which I am empowered by law to conduct investigations of and make arrests for offenses

enumerated in Title 18 of the United States Code.

2.      I am a Special Agent with the Federal Bureau of Investigation (hereinafter the

"FBI") and have been since March 2019.  I am a graduate of the FBI Training Academy in

Quantico, Virginia where I received training in white-collar crime, cyber-crime, interviewing,

interrogation, evidence collection, intelligence analysis, and legal matters, among other topics.  I

am a Marine Infantry and Force Reconnaissance officer.  As part of my responsibilities in that

position, I lead Marines in the execution of raids, searches, surveillance operations, and

interviews during training and combat operations.  While deployed, my unit's operations

involved stopping and searching vehicles for contraband, including weapons, drugs, and explosives material.

3.     During my time as an FBI special agent, I have participated in numerous criminal investigations, including investigations into suspected homicides, armed robberies, narcotics trafficking, firearms trafficking, violent criminal activity, racketeering, money laundering, and securities fraud. My participation in these investigations has included assisting in the controlled purchase of narcotics utilizing confidential informants and cooperating witnesses; participating in the execution of search and arrest warrants; conducting electronic and physical surveillance; analyzing records related to narcotics trafficking and cybercrimes; reviewing and analyzing cellular records and cell site information; and interviewing individuals and other members of law enforcement regarding the manner in which cyber criminals deceive and extort their victims. I have assisted in investigations into organized criminal enterprises, including violent street gangs and large-scale narcotics trafficking organizations.

4.     I am one of the case agents involved in the investigation of the rivalry between members and associates of the East End gang, which is allied with the East Side gang, the PT Barnum gang, the West Side "150" gang, and the Marina Village gang. This is alliance is fighting against members and associates of the Original North End ("O.N.E") gang and the Greene Homes Boys ("GHB") gang, all neighborhood-centric groups of young men and adolescents based in the City of Bridgeport, Connecticut. Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence of violations of Title 18, United States Code, Section 1962(d) (racketeering conspiracy) and Title 18, United States Code, Section 1959 (violent crimes in aid of racketeering) (the "Subject Offenses") as described in Attachment B.

5.      I have participated in this investigation and, as a result of my participation and information received from other law enforcement officers, including agents of the FBI, officers and detectives of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), the Drug Enforcement Administration ("DEA"), the Connecticut State Police ("CSP") and the Bridgeport Police Department ("BPD") (collectively referred to as "law enforcement").  I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by law enforcement; and (3) my experience and training. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

6.      I submit this affidavit in support of a search and seizure warrant authorizing the extraction and examination of the SUBJECT PHONE, which was dropped by RALPH BIJOUX during his arrest on September 25, 2023.  I am currently investigating BIJOUX for Racketeering Conspiracy, in violation of Title 18, United States Code, Section 1962(d) in connection with his participation in the East End Racketeering Organization from 2014 through the present (referred to herein as "Target Offense").

7.      BIJOUX is currently detained for state firearm-related charges.

8.      The Stratford Police Department obtained a state search warrant, signed in the Connecticut Superior Court on September 28, 2023, authorizing the seizure and extraction of the SUBJECT PHONE for the time period of September 9, 2023 through September 13, 2023. The

Stratford Police Department extracted the SUBJECT PHONE for examination and provided a copy to FBI Special Agent (SA) Andrew Pappas for review.[1]

## JURISDICTION

9.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.      Starting in approximately 2015, there has been a rivalry between two broad alliances of gangs as detailed above.   These two groups have carved out huge swaths of the city, which they control.  Rival gang members are prohibited from entering the opposing group's territory or do so at their peril.  As previously noted, the first alliance was between the gangs known as Original North End ("O.N.E.") and Greene Homes or Greene Homes Boyz ("GHB"). This alliance controls territory in the North End of Bridgeport (North Bridgeport) and the Charles F. Greene Homes Housing Project in The Hollow (an area below and to the west of the North End). In 2021, a rift occurred between O.N.E. and Greene Homes, stemming from the return of older Greene Homes gang members that were not friendly with O.N.E. As feuds between gang members developed, two Greene Homes members, Shamar Swinton, AKA "Chili," and Dhamoni Lockhart, AKA "Moni," were murdered within 72 hours of each other in

---

[1] As discussed below, BIJOUX used the SUBJECT PHONE to stream an Instagram Live feed on September 25, 2023, in which he showed himself with a firearm.  As the SUBJECT PHONE contains primary proof of that crime, it was seized as evidence pursuant to the Stratford Police Search and Seizure Warrant and is being retained for its evidentiary value pending conclusion of BIJOUX's case.  BIJOUX, either in person or through a lawyer, has not asked for return of the SUJBECT PHONE.

June of 2021. Law enforcement believes these murders were perpetrated by members of the O.N.E gang. O.N.E. and Greene Homes are rival gangs of another Bridgeport based local gang comprised of an allegiance between groups from the East End and the P.T. Barnum Housing projects, which will be referred to herein as the "East End" alliance. The East End alliance controls territory in the Eastern and Southern part of the city of Bridgeport.

11.     Based on the investigation conducted to date, including, but not limited to, arrests of and seizures made from gang members and associates; debriefings of arrestees, confidential informants, cooperating defendants, cooperating witnesses; examination of information derived from cellphone extractions, the analysis of forensic evidence and the review of social media, the investigation has revealed that both of the referenced gangs sell drugs in the territory they respectively control, often sharing customers, and shoot at/kill rival gang members who enter their territory. Based on the above information it has been determined that the O.N.E. and GHB deal in crack cocaine, heroin and marijuana. Text messages found on the telephones of members and associates of O.N.E. and GHB members make clear that they share customers, buy drugs together, and share profits. Drug proceeds are also used to buy firearms, which are then shared between gang members. The East End alliance is known to primarily sell crack cocaine and marijuana although some members also sell heroin. They control sales in their territory, and they too are believed to buy drugs together, share customers and combine profits.

12.     In both groups, rival gang members are referred to as the "Opps" or "opposition." Social media platforms—including Facebook, Snapchat and Instagram—are used by gang members on both sides to post pictures of themselves with narcotics, to promote their gang, threaten rival gang members, incite violence, to celebrate acts of violence, reveal or intimidate potential cooperators/witnesses, and to post pictures and videos of themselves posing with

firearms. Social media platforms are also used to coordinate narcotics sales, to sell and trade firearms, and to plan and coordinate acts of violence. Both rival gangs also post hip hop or rap videos which celebrate the criminal conduct of their respective enterprise, namely acts of violence against rival gang members, and display the respective enterprise's collection of firearms, which they upload to YouTube and share on Facebook. The videos announcing their exploits and murders raise the status of an individual gang member within the group and further his reputation within the respective gangs.

13.     Based on information received from the BPD, other law enforcement officers, social media, cooperating defendants, and witnesses, a federal trial jury convicted ERIC HAYES a.k.a. "Heavyweight Champ," TRAVON JONES, a.k.a. "Budda PG," "TREVON WRIGHT a.k.a. "Tre," and KEISHAWN DONALD, a.k.a "Kei" of Racketeering Conspiracy in violation of Title 18, United States Code, Section 1962(d). East End gang members TYRONE MOORE a.k.a "Ty Ralph Lauren," KYRAN DANGERFIELD, a.k.a. "Ky," HARRY BATCHELOR, a.k.a. "Bookie," and CHARLES ANTHONY BONILLA, a.k.a. ".30 cal" and "Li'l Ant" plead guilty to Racketeering Conspiracy in violation of Title 18, United States Code, Section 1962(d).

14.     Numerous other East End gang members and associates, including Jordan DELGADO, RALPH BIJOUX, and KANIYE CORLEY who committed racketeering acts, detailed below, with the East End gang members who went to trial, were not indicted.[2]

15.     Since the indictments and continuing into the East End gang trial before Judge Bolden, East End gang members, including DELGADO, CORLEY, and BIJOUX, have

---

[2] Although MOORE, DANGERFIELD, BATCHELOR and BONILLA pleaded guilty, HAYES, JONES, WRIGHT and DONALD proceeded to trial before the Honorable Victor A. Bolden and were convicted of Racketeering Conspiracy by a jury on December 5, 2023.

continued to commit racketeering acts in furtherance of the East End gang, which are detailed below. These racketeering acts include illegal firearms possession and robbery in violation of Connecticut law. For the reasons set forth below, I believe there is probable cause to believe that the **SUBJECT PHONE** will contain evidence of the Target Offenses.

## Probable Cause

### a.    Firearms Arrest of BIJOUX on September 25, 2023

16.    On September 25, 2023, BPD Officer Bettini learned that BIJOUX was in the area of Jettie Tisdale School in the East End of Bridgeport while streaming his activities on Instagram Live through account "pointguardmack." BIJOUX displayed a tan firearm during the live stream and said "19x on me," and Officer Bettii obtained a recording of the live stream. Officer Bettini was also aware that BIJOUX was a suspect in the September 12, 2023 robbery at the Honeyspot Motel in Stratford. BIJOUX appeared to be live streaming the video from the Instagram application on his phone, as the video depicted him walking down the street while he appeared to be holding a device to video record himself. I believe this device to be the SUBJECT PHONE.

17.    Based on my training and experience, I know the Instagram mobile device application allows a user to record oneself in a video livestream and broadcast it to other Instagram users. Furthermore, I know East End gang members to often use social media to advertise the possession of firearms, money, and drugs in an attempt to gain reputation and status within the gang.

18.    Officer Bettini canvassed the area around Jettie Tisdale School and located BIJOUX walking with another male, later identified as Avery Humphrey. Upon seeing Officer Bettini, BIJOUX fled into the rear yard of 272 Davenport Street and dropped an item. Officers

eventually tased BIJOUX and placed him in custody. Officers returned to 272 Davenport Street and located BIJOUX's cellphone and a tan Glock 19x firearm Serial Number BWZP000 in the yard. Law enforcement also recovered from BIJOUX's person two cannabis bags containing a green leafy plant substance weighing a combined 11.7 grams. The Glock was determined to have been stolen; as elaborated on below, an arrest warrant for BIJOUX from the Middletown Police Department is pending for the stolen firearm.

19.     Of note, the police report in CFS 23-80051 documents the Instagram account name as "pointguardmack," however a search on Instagram for account "pointguardmack" yielded no results. I have reviewed a recording of this video, and the account name is "pointgaurdmack." I have conducted additional reviews of the Instagram account "pointgaurdmack," and the profile photo and many posted photos and videos are of BIJOUX.

**b.   *The September 12, 2023 robbery of Jocquon Hart.***

20.     On September 12, 2023, around 2:00 p.m., Stratford Police responded to the Honeyspot Motor Lodge, in Stratford, Connecticut. Jocquan Hart informed a Stratford Police Officer that he had just been robbed by two black male suspects who had guns. Hart explained that he was supposed to meet Nicki Talavera-Medina at the Motor Lodge and she had directed him to Room #140. Once Hart reached the outside are of the room, two men approached him with guns pointed at him and ripped his gold chain from his neck and took his wallet. One of the men hit Hart in the face with the pistol, before leaving the hallway towards an exit.

21.     Stratford Police recovered video surveillance from the Honeyspot Motor Lodge and the surveillance showed that at 1:01 p.m. on September 12, 2023, Jordan DELGADO and Ralph BIJOUX were led to Room #212 by Beyonce Jackson, who had rented the room. All three faces were visible in the video surveillance.

22.     About seven minutes later, BIJOUX and DELGADO leave Room #212, wearing masks and their hoods up.  They then reenter Room #212 four minutes later.  Thirty minutes later, BIJOUX and DELGADO leave the room again and are followed by Jackson and Talavera-Medina.

23.     At 2:01 p.m., BIJOUX and DELGADO enter the first-floor hallway of the Motor Lodge and hide around the corner from Room #139.  Two minutes later, Hart is seen walking toward Room #139; Hart can be seen using his cellphone.

24.     When Hart reaches the corner where BIJOUX and DELGADO were hiding, BIJOUX approaches Hart and points a pistol at Hart's chest while DELGADO points a pistol at Hart's head.  Both BIJOUX and DELGADO reach into Hart's pockets and BIJOUX took a wallet and ripped a gold chain from Hart's neck.  As BIJOUX and DELGADO attempt to leave, Hart starts to follow them and both BIJOUX and DELGADO point their pistols at Hart.

25.     BIJOUX and DELGADO then leave the Honeyspot Motor Lodge and surveillance video shows them walk to the northwest corner of the parking lot between East Stone and the Stratford Antiques Center, where both men wave down a gray colored sedan which picks them up.  The gray colored sedan was consistent with a 2016 Hyundai Sonata bearing CT license plate BC20747, which was registered to Jackson.  License Plate Readers captured Jackson's license plate travelling on Honeyspot Road at the time BIJOUX and DELGADO flag it down.

c.  *The September 10, 2023 firearm burglary of Arianah Acevedo*

26.     On September 10, 2023, the Middletown Police Department responded to a burglary call from victim Arianah Acevedo, DOB **/**/2001, which is known to me, at her residence located at 309 South Main Street, Apartment A10, Middletown, CT. Acevedo reported

two black males wearing all black were inside her apartment and had left the scene. Upon arriving at the scene, officers observed a shattered glass sliding door, which lead into the apartment. Inside the residence, officers observed an empty Glock gun case and multiple high-end purses in Acevedo's bedroom. Acevedo stated that she has a Glock 19X firearm registered to her, which law enforcement later confirmed in COLLECT a Glock 19X with serial number BWZP000 registered to Acevedo.

27.     Interior surveillance cameras revealed two males entering the broken glass door at approximately 12:46 AM. The first suspect appeared to be a white male wearing jeans withs rips in the pant legs, a black unzipped hooded sweatshirt with a white shirt beneath it, black and white Nike sneakers, a facemask covering the lower half of his face, and appeared to be holding a firearm. The second suspect wore black shoes, black pants, and a black hooded sweatshirt with a Nike logo. The surveillance video depicts the two males walking directly to Acevedo's bedroom and going through her closet, dresser drawers, the Glock handgun case, and her nightstand. The video did not reveal what specific items were taken, but neither suspect wore gloves. Acevedo stated she was unable to locate the Glock firearm, and it was entered as stolen in COLLECT.

28.     On September 25, 2023, Bridgeport Police Department Officer Kevin Bettini informed Middletown PD that he had arrested BIJOUX for the possession of Acevedo's stolen Glock firearm, the arrest circumstances which have been articulated previously in this affidavit.

29.     On September 10, 2023, Middletown Police officers swabbed the Glock gun case and a Dior purse handle for DNA and submitted it to the Connecticut State Lab for comparison to a known DNA sample from RALPH BIJOUX. Middletown PD obtained BIJOUX's DNA pursuant to a DNA search warrant obtained on November 22, 2023 and executed on November

29, 2023. On December 11, 2023, the lab confirmed the DNA swabs from the Glock gun case are consistent with BIJOUX being a contributor.

30.    On December 29, 2023, Middletown PD Detective Small obtained a signed arrest warrant in the State of Connecticut Superior Court for BIJOUX charging him with Criminal Possession of Firearm, Carrying a Pistol without a Permit, Stealing a Firearm, Burglary in the First Degree, Criminal Mischief in the Third Degree, Conspiracy to Commit Stealing a Firearm, Conspiracy to Commit Burglary in the First Degree, and Conspiracy to Commit Criminal Mischief in the Third Degree.

### d.  The April 26, 2023 Robbery of James Darden

31.    On April 26, 2023, Bridgeport Police Officers responded to a report of a robbery in the area of Stratford Avenue and Read Street in Bridgeport. The victim, James Darden, reported that a male wearing all black armed with a firearm robbed Darden of his black and red SSR Motorsport 15cc motorcycle, and last saw the suspect traveling north of Sixth Street.

32.    BPD officers canvassed the area of Sixth Street and Deacon Street and located a male wearing all black sitting on the stolen motorcycle, who was later identified as KANIYE CORLEY. A second male dressed in all dark clothing and standing near CORLEY was identified as Jermaine Culler. A third male near CORLEY, also dressed in all black clothing, began to walk south on Sixth Street away from the responding officer. Bridgeport Police officers detained CORLEY and Culler without incident, but the third male did not comply with the officers' commands and appeared to enter a nearby residence at 259 Sixth Street. Based on information that at least one of the suspects in the motorcycle robbery was armed, Law enforcement entered and conducted a protective sweep of 259 Sixth Street to protect the occupants. During the sweep, Bridgeport Police officers encountered Rachel Joseph, who stated she lived there with her son,

who was on the third floor. There, law enforcement encountered RALPH BIJOUX and Avery Humphrey. Officers also located a black north face jacket and masks that matched the description of the suspect's clothing. During the protective sweep, officers also located in an attic a loaded Glock 23 .40 caliber handgun with a 22 round capacity magazine serial number CGX180US and a Taurus Ultra-Lite .38 Special revolver with serial number JS85786. Officers also recovered a black iPhone in the jacket pocket of the black North Face jacket. CORLEY admitted the phone belonged to him, and provided the phone number as 203-668-7494, which Officer Bahr dialed, prompting the iPhone to ring.

33.     The Glock 23 was reported stolen from Colchester, CT, and was swabbed for DNA and test fired for entry into NIBIN. The Connecticut State Lab conducted DNA analysis on the DNA swab from the firearm and obtained a CODIS match with BIJOUX's DNA. BPD Lieutenant Niestemski executed an arrest warrant on BIJOUX for firearms related charges for possession of the Glock 23.

### e. *The April 12, 2021 robbery of Juan Sanchez*

34.     On April 12, 2021, Bridgeport Police officers responded to a report of an armed robbery of Juan Sanchez, who was doing landscaping work at 633 Newfield Avenue in Bridgeport. Three males, two armed with firearms, took Sanchez's wallet which contained $1200, a Home Depot Card, a Chase bank credit card, and his cell phone. Sanchez stated that one of the males wore a dark hooded sweatshirt with the word "THRASHER."

35.     Bridgeport Police officers located surveillance footage of three males exiting East End Package store at 1153 Stratford Avenue and walking to 633 Newfield Avenue where the robbery occurred. The male wearing the dark hooded sweatshirt with "THRASHER" approached the victim and brandished a dark colored firearm and pointed it at Sanchez and began to rifle

through his pockets. The suspect with the black "THRASHER" hooded sweatshirt and a second suspect wearing a bright fluorescent green mask with a skeleton imprint enter the dump truck that is parked at the residence and remove a red bag. A third male wearing a gray sweatshirt with the word "THRASER" on it also participated.     Additionally, Bridgeport Police Officer Jansy Rodriguez obtained video footage of BIJOUX approximately two hours prior to the robbery wearing a black hooded sweatshirt with the word "THRASHER" printed on the middle.

36.     BPD Officers learned that BIJOUX lived at 259 Sixth Street in the East End of Bridgeport and often parked an unregistered brown Buick Century vehicle with illegal temporary Texas tags within a few blocks of his residence. On April 13, 2023, BPD Officers located the vehicle and conducted physical surveillance for approximately 20 minutes, at which time three males exited a residence on Bunnell Street and entered the vehicle. Officer Goncalves observed the driver adjust something on his hip and then enter the vehicle. BPD Officers approached the vehicle to detain the individuals, and observed the driver, later identified as BIJOUX, place something on the floor of the vehicle. The front passenger, later identified as Avery Humphrey, attempted to place a firearm in the glovebox, but was unable to shut it. The rear passenger, later identified as Resean McPherson, wore a bright fluorescent green mask with a skeleton imprint matching the mask the individual wore during the robbery as seen on the video. Law enforcement seized a Springfield semi-automatic .45 caliber handgun with serial number 0297037 from under the driver's seat, a Ruger-Model 9E semi-automatic 9mm handgun with obliterated serial number in the glove box, and a black wallet from the rear seat floor. The wallet contained Sanchez's Home Depot Card, Chase Bank Credit Card, and BJ's membership with Sanchez's photo.

37.     Law enforcement read Humphrey his Constitutional rights, and Humphrey waived them and agreed to speak with law enforcement. Humphrey admitted to being with BIJOUX, whom he referred to as "Mack," and Resean the day of the robbery. The three males saw the male doing yardwork and decided to rob him. Humphrey stated he did not have a firearm with him at the time and that he wore a gray sweatshirt with the word "THRASHER" on it, and that he had access to other firearms.

**Evidence on the SUBJECT PHONE**

38.     The SUBJECT DEVICE with call number 475-332-6494 was serviced by T-Mobile and subscribed to Rachel Joseph, who is BIJOUX's mother, from December 8, 2022 through October 2, 2023.

39.     A review of the SUBJECT DEVICE during the authorized time period of September 9, 2023 through September 13, 2023 revealed evidence of criminal activity.

40.     On September 10, 2023, BIJOUX contacted Facebook user Mobbworld Jefe via Facebook Messenger on the SUBJECT DEVICE "2 yerks," then on September 11, 2023, BIJOUX sent another message saying "U got weed," and finally on September 12, 2023, BIJOUX sent a message "I'm boutta come grab some weed."

41.     On September 11, 2023, BIJOUX sent a Facebook message to Facebook user Spd Dthang saying "Yerks c" and "?" The next day BIJOUX messaged the same user "Need 5 more," which I believe to be a request for 5 more "yerks" or Percocet pills.

42.     On September 13, 2023, BIJOUX sent a Facebook message to Facebook user GetBakk Jay "Who got Weed," and GetBakk Jay responded "Boob," and provided the location as "Wilmot probably."

43.     On September 12, 2023 BIJOUX sent a Facebook message to Facebook user Sid

Womack, known to law enforcement to be used by East End gang associate Sidney Womack,

"Yerks," and "I need 2 15s bro." Based on my training and experience, I believe BIJOUX sent

Womack a Facebook message through the Facebook messenger mobile application to purchase

two 15mg Percocets.

44.     On September 10, 2023 BIJOUX sent a text message to phone number 646-659-

6649 with contact name "Jus," whom I believe to be East End gang member Justin Dicks,

"Yerks." I believe this to be an effort to acquire Percocet pills from Justin Dicks.

45.     There are numerous message threads on the SUBJECT DEVICE from September

9, 2023 through September 13, 2023 between BIJOUX and other users in which BIJOUX

requests quantities of Percocets and Marijuana. Based on my training and experience, I know

East End gang members often use cellular devices to communicate through Facebook messenger

and text message to acquire drugs. I believe BIJOUX used the SUBJECT DEVICE to acquire

drugs via text message and Facebook messenger throughout his use of the SUBJECT DEVICE.

**Meta (Facebook and Instagram) Evidence**

46.     On February 6, 2024, the Honorable Magistrate Judge S. Dave Vatti signed a

federal search warrant in the District of Connecticut authorizing the search of certain social

media accounts, including the Facebook account Mack A DoYa (ID 100023235557123),

Facebook account Drench Em (ID 100068193879425), and Instagram account Mack A DoYa

(ID 22274887926), all used by BIJOUX. Each of these social media accounts are listed as user

accounts in the SUBJECT DEVICE. This affidavit does not include every instance of criminal

activity identified in these social media accounts. Instead, it establishes probable cause that

BIJOUX used these accounts to further criminal activity through mobile social media applications on the SUBJECT DEVICE.

### a.    Evidence from Facebook Account Drench Em

47.    A review of the Facebook accounts Drench Em and Mack A DoYa, used by BIJOUX, revealed that one of the registered devices was an iPhone 12,1 updated on September 25, 2019. The physical extraction of the SUBJECT DEVICE revealed that the "detected phone model identifier" is an iPhone 12,1.

48.    On September 24, 2023, BIJOUX sent a Facebook message to Facebook user Da Donn providing his phone number as "4753326494."  Approximately four minutes later, BIJOUX sent a Facebook message to Facebook user Da Donn containing multiple photos of BIJOUX with two firearms in what appears to be a bedroom or hotel room. One of these firearms is a tan handgun that is consistent with the firearm BIJOUX displayed on Instagram Live the next day just prior to his arrest.

### b.    Evidence from Facebook Account Mack A DoYa

49.    On August 23, 2023, BIJOUX sent a Facebook message from account Mack A DoYa to Facebook user YG King "Shi boutta get these yerks fm," and YG King responded "Yea you give me one yaheard and roll that weed." BIJOUX then provided the SUBJECT PHONE number.

50.    On April 7, 2023 BIJOUX received a Facebook message on account Mack A DoYa from Facebook user Johnny Benzo who asked "Yoo u still need food," to which BIJOUX responded "yeah," and Johnny Benzo responded "li for what yaheard." BIJOUX responded "9," and then provided his phone number as "4753326494," which is the SUBJECT PHONE. Based on my training, experience, and knowledge of this investigation, I believe "food" to be slang for

ammunition, a "yaheard" to be a firearm, and a "9" to be a 9mm firearm. I believe BIJOUX used Facebook and the SUBJECT PHONE to coordinate the receipt of 9mm ammunition from Johhny Benzo.

51.    BIJOUX confirmed his phone number to be 4753326494 through Facebook Messenger on multiple occasions including the following:

*a.*    On January 8, 2023, BIJOUX sent a Facebook message to Facebook user Dreia Essence providing his phone number as "4753326494."

*b.*    On January 23, 2023, BIJOUX sent a Facebook message to Facebook user Sdot Gogettem providing his phone number as "4753326494."

*c.*    On March 28, 2023, BIJOUX sent a Facebook message to Facebook user Rone EBK providing his phone number as "4753326494."

*d.*    On February 8, 2023, BIJOUX sent a Facebook message to Facebook user Ray Allen providing his phone number as "4753326494,"

*e.*    On May 4, 2023, BIJOUX sent a Facebook message to Facebook user Original HG providing his phone number as "4753326494,"

*f.*    June 28, 2023 BIJOUX sent a Facebook message to Facebook user Kay Lovee providing his phone number as "4753326494,"

*g.*    On August 29, 2023, BIJOUX sent a Facebook message to Facebook user Wugga Racks, providing his phone number as "4753326494,"

*h.*    On September 18, 2023, BIJOUX sent a Facebook message to Facebook user Getback Rell providing his phone number as "4753326494,"

52.    On January 6, 2023, BIJOUX used the Mac A DoYa account to message Facebook user Kejuan Hunter "I jus sent you 50," referring to a CashApp payment for "Za,"

which I know to be a slang term for marijuana. Facebook user Kejuan Hunter appears to meet BIJOUX to sell him a quantity of marijuana, which BIJOUX paid for through the mobile application CashApp.

53.     Based on my training and experience, I know that CashApp is most commonly used as a mobile application to make cash payments. I believe BIJOUX made a cash payment via CashApp on the SUBJECT PHONE for marijuana (Za).

54.     Approximately four hours later on January 6, 2023, BIJOUX sent a Facebook message using the same account as earlier in the day to Kejuan Hunter that he was on his way to the Ave and asked "Can I get a 8th nd pay u tmr bro." BIJOUX messaged "I'm omw I'm on my street," and Kejuan Hunter responded I'm waiting on you I'm not just gon go and wait," and then Kejuan Hunter placed a Facebook call to BIJOUX.

55.     Based on my training and experience, I believe BIJOUX coordinated the purchase of marijuana ("8th") from Facebook user Kejuan Hunter via the Facebook mobile messenger application on the SUBJECT PHONE. BIJOUX indicated he was on his way (I'm omw I'm on my street) to Stratford Avenue (the Ave) to meet Kejuan Hunter, which, based on my training and experience, leads me to believe that on January 6, 2023, BIJOUX was likely using the SUBJECT PHONE to access Facebook.

56.     On March 2, 2023, BIJOUX sent a Facebook message to Facebook Jay Bakk providing his phone number as "4753326494," then stated, "I'm driving rn Hollup." Based on BIJOUX stating that he was driving at that moment he sent the Facebook message, I believe he used the Facebook messenger application on the SUBJECT PHONE using cellular service from T-Mobile, which serviced that phone number at that time.

  **c.  Evidence from Instagram account Mack A DoYa**

57.    As discussed above, on September 25, 2023, BPD Officer Bettini arrested BIJOUX with the SUBJECT PHONE after seeing BIJOUX streaming his activities on Instagram Live through account "pointgaurdmack." BIJOUX displayed a tan firearm during the live stream and said "19x on me," and Officer Bettini obtained a recording of the live stream. BIJOUX had used the SUBJECT PHONE to livestream on Instagram.

58.    Based on my training and experience, I know that East End gang members and associates use their mobile phones to send text messages and Facebook Messages through the Facebook mobile messenger application to coordinate drug transactions and obtain firearms and ammunition. There is evidence of both in the SUBJECT DEVICE and in BIJOUX's Meta accounts. Furthermore, from January 2023 through September 2023, BIJOUX repeatedly confirmed his phone number to be 4753326494. BIJOUX's Facebook conversations and livestream videos reveal that on at least some occasions he is driving or does not have access to wireless internet, indicating that he is using a mobile device with cellular service. Finally, the SUBJECT PHONE number was serviced by T-Mobile and subscribed to BIJOUX's mother from December 8, 2022 through October 2, 2023.

59.    Based on Facebook evidence of drug and illegal firearms activity using the SUBJECT PHONE, evidence in the SUBJECT PHONE itself between September 9, 2023 through September 13, 2023, BIJOUX's use of the Facebook messenger mobile application to further criminal activity, and BIJOUX admission of his ownership of the SUBJECT PHONE number, I believe the SUBJECT PHONE will contain evidence of racketeering activity between January 1, 2023 through September 25, 2023.[3]

---

[3] As a practical matter, it is impossible to limit the download a cellphone for a specific period of time. Rather, a cellphone forensic download recovers the contact of the entire cellphone even to include time periods not covered by

**Information Regarding Cellular Telephones and the Requested Search Warrants**

60.    Based on my training and experience and participation in this investigation, I believe that the East End Gang members regularly use their cellphones to access social media in order to further the racketeering conspiracy, including coordinating narcotics and controlled substances sales, and coordinating acts of violence in furtherance of the East End Gang and retaliating against rival gangs, all in order to increase the standing of the individual East End Gang members.  I believe that I have probable cause to believe that the **SUBJECT PHONE** was used by BIJOUX to communicate criminal activity related to the East End Gang in Bridgeport, CT.

61.    I further believe that there will be communications on the cellular phones relating to other co-conspirators or people who are members of the East End Gang. I therefore request permission to search the **SUBJECT PHONE** for evidence of the Target Offenses, including evidence of association between members of the East End Gang.  Accordingly, I believe that there is probable cause to believe that the **SUBJECT PHONE** the Bridgeport Police seized on September 25, 2023 and will reveal evidence of racketeering conspiracy, firearms trafficking, drug trafficking and armed robberies.

62.    Based on my training and experience, I know that the **SUBJECT PHONE** may have some or all of the capabilities that allow each one to serve as a wireless telephone, digital camera and video recorder, portable media player, global positioning system navigation device, hand-held radio, and a personal digital assistant.  In my training and experience, examining data stored on devices like the **SUBJECT PHONE** can uncover, among other things, evidence that

---

the warrant.  Once the extraction is downloaded, however, only the portions of the downloaded extraction within the date ranges discussed in Attachment B will be reviewed.

reveals or suggests who possessed or used the particular device, as well as evidence relating to other persons with whom the device's user was in contact.

63.     Furthermore, based on my training and experience, I know that internet browsing history stored on cellular telephones can contain evidence of text communications between persons who conspire to commit criminal activity together. Based on my training and experience, I also know that internet browsing history stored on cellular telephones can contain evidence of internet searches for locations and addresses.  Here, such browsing history may contain information about the targeted robbery locations or evidence of the defendants searching the news for reports of the robbery after the incident.  There may also be evidence of searches for firearms or information about the vehicles used in the robberies. Further, based on my training and experience, I know that cellular telephones may contain videos and images of co-conspirators; information regarding possible locations to rob; information concerning the proceeds from the robberies; and information concerning firearms.  Specifically, based on my training and experience, I know the following information tends to exist on cellular telephones, including telephones used by those committing criminal acts:

    I.     the telephone number, ESN number, IMEI number, other identifying number, serial number, and SIM card number of said telephone;

    II.    the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;

    III.   descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;

IV.    any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

V.     any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

VI.    GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

VII.   saved searches, locations, and route history in the memory of said devices;

VIII.  internet browsing history, to include, internet searches in the memory of said device; and

IX.    images and videos in the memory of said device.

64.    It is requested that the Court authorize law enforcement agents to retrieve the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze cellular telephones in this manner is not readily available to law enforcement during the course of the execution of a search and/or arrest warrant. Further, turning on cellular phones in a non-laboratory setting, where there is no "jammer" or radio shielding devices, permits additional signals to be received by the telephone and thereby alters the data present in the phone at the time of seizure. Therefore, it is

often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.

65.    It is also requested that the requested search warrants be deemed executed once the **SUBJECT PHONE** have been seized in the manner described above, and that further analysis of the images be permitted at any time thereafter.

## Electronic Storage and Forensic Analysis

66.    The requested search warrant for the **SUBJECT PHONE** would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

67.    As described above and in Attachment A, this application seeks permission to search and seize information and things that the **SUBJECT PHONE** might contain, in whatever form they are stored.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, information that has been viewed via the Internet is typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

68.    Searching for the evidence described in Attachment A may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches

for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment A, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the FBI, or other law enforcement agency, intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

## **CONCLUSION**

69.     Based on the foregoing, I submit that this affidavit supports probable cause for a warrant to search the **SUBJECT PHONE** for the items described in Attachment A, which constitute evidence, fruits, and instrumentalities of criminal activity.  I therefore respectfully request that the Court issue the requested search warrants.

## **REQUEST FOR SEALING**

70.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise

seriously jeopardize the investigation.

Respectfully submitted,

ANDREW PAPPAS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


Sworn to before me and subscribed to on this 21st day of March 2024.


HON. S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to records and information associated with an Apple iPhone with a

with cracked screen and black case belonging to RALPH BIJOUX seized by Bridgeport

Police Department on September 25, 2023.

**ATTACHMENT B**

**Particular Things to be Seized**

All records and information contained in the SUBJECT DEVICE, for the time period January 1, 2023 through September 25, 2023 to include the following:

1.    the telephone number, ESN number, serial number, and SIM card number of the telephone;

2.    the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the telephone;

3.    descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, violations of Title 18, United States Code, Section 1961(d)(Conspiracy to Commit RICO), Title 18, United States Code, Section 1959(VICAR murder) and Title 18, United States Code, Section 2 (aiding and abetting in the same) (the "Target Offenses");

4.    any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the telephone;

5.    any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the telephone, such as passwords, sign-on codes, and program design;

6.    GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7.    saved searches, locations, and route history in the memory of said telephone;

8.    internet browsing history, to include, internet searches in the memory of the telephone;

9.    images and videos in the memory of the telephone; and,

10.   evidence of user attribution showing who used or owned the telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device/s.